May I please the court? My name is Markandu Vigneshwaran. I appear on behalf of the petitioner Ramesh Paramanathan. Your Honour, in this case the main issue is the adverse credibility of the petitioner. The BIA relied on three main areas for adverse credibility finding. Two of the inconsistencies in between the petitioner's credibility fear interview, asylum application and his in-court testimony. The third is the omission in the affidavit of the respondent's father. First of all, the IJA's credibility determination was not supported by the record and the law. The reason is if you look at all these three documents regarding the first inconsistency, it was in detail. The respondent in his asylum application stated that ten army personnel came and two of them approached and arrested. That is consistent with the credibility fear interview that two people arrested. That is consistent with his asylum application and in-court testimony. But the judge misunderstood the respondent's testimony that two came and arrested. So there is no record that supports the IJA's factual determination and his credibility determination based on that. The second thing is who arrested the respondent the last time? The respondent at the credible fear interview stated that the EPRLF members came, they were there and they identified. That is administrative record 171. And during the in-court testimony, the respondent testified consistently that the army came and arrested. The EPRLF pointed out and then they took, the EPRLF took him to a detention center that located within the army camp. But the problem is with the IJA and BIA identified the problem in his asylum application. In his asylum application, he did not mention about the army. But, Your Honor, the asylum application was prepared by an attorney. And it can be explained in this case because the part of the army in this particular confrontation is very minor compared with EPRLF participation. But they're working together, right? Aren't the army and the EPRLF and the EPDP all working together to arrest this? The EPDP, EPRLF, they were there to identify the army arrested and handed over to the EPRLF. They took them, took the petitioner to the army camp. Their army, their camp located within the army camp. Look, after the Real ID Act, assuming that it was intended to make a change, the fact that we can harmonize the two disparate things that look disparate to the trier of fact, is the fact that we can harmonize it sufficient for us to overturn what they did? Yes, Your Honor. In this particular… Or we have an explanation. Well, maybe his attorney wrote something different. Is the fact that we can think of explanations or harmonize it, is that enough for us to overturn a credibility finding? Your Honor, in this particular case, if you look at, there are three documents involved, Your Honor. Doesn't the law still require that there be an inconsistent statement? So when you look at the record to determine whether there's an inconsistent statement or a discrepancy, the law still requires that one exists. And so if you look at the record and there isn't one, then, yeah, the IJ could have gotten that wrong. Let's move on to the third one, though, because I find that one the most troubling thing. I'm not quite sure it's also an inconsistency. Yes. But the third one was the fact that… How do you pronounce your client's name? Paramanandam. Paramanandam testified to three incidences of arrest and torture. And his father apparently played the same role with respect to all three. But the letter that was introduced only by the father only spoke to two of the three. And that was the third inconsistency that the IJ and the BIA found. And it does make you wonder if the father was present and, you know, was the one who bribed the authorities to get him out of jail, why didn't he write about all three of them? Yes, Your Honor. In this particular case, he submitted an affidavit, and he was not available for cross-examination. I developed it to ask what happened. You know, it made the omission in his part. Who was not available for cross-examination? The father was not there. Okay. Who submitted the affidavit? I forget. The petitioner. Excuse me? Petitioner submitted. I didn't understand. Yes, because this is an affidavit. Who submitted the affidavit? The petitioner submitted the affidavit. And the petitioner explained during the cross-examination that he doesn't know the reason why his father did not mention about that. And he also testified that he didn't have an opportunity to talk to him. He didn't talk to him after he came to the United States. His father didn't simply leave out the third reason, did he? His father said, he said right after the third thing, my dad gave me money and set me off because of the terrible problems. His father doesn't say that at all. He says, after the peace, after the memory of understanding, after the MOU, we all were comfortable there. But when the peace talks were breaking down, I thought, uh-oh, that's a problem. So I sent him away and gave him money. So the father says the reason he did it was because the peace talks were breaking down, not because his son had been picked up again and the father now had to spend, and had been held for the longest time of all, and the father had to spend the most money of all to get him out. That's not the reason. He says, the reason I did it was the peace talks were breaking down. Isn't that right? That's what the father says. That's not just he left something out. He's giving a different reason. Yes, Your Honor, that is his father's reason why he sent his son to help sons to flee. They were living peacefully, he said. We were living peacefully, but then the peace talks stopped, and I thought I better send my son out of here in death. That's what he says. So that's inconsistent with what your client said was the reason he left. Yes, since this is an affidavit and there is no explanation can be obtained from the respondent's petition. It's because if you hadn't submitted this affidavit, you'd have a stronger case. Because, I mean, honestly, I really don't think the other two are really inconsistent when you read all of the documents and the transcript. This appears to be really inconsistent. And, moreover, even though the Real ID Act took out the requirement that it go to the hire of the claim,  it goes to the third incident of beating. And, you know, you hate to see your client penalized for trying to submit corroboration when it seems as though he has an otherwise trustworthy story. It's frustrating. Yes. Other than the father's affidavit, Your Honor, if you look at the testimony, it's consistent with the country condition and his other documentation. The father's petitioner doesn't know why he left that out. So in court proceedings, Your Honor, the judges normally give very minimal weight to an affidavit submitted because the person is not there to be cross-examined or examined to find out certain more information about the affidavit. So it should be fair to say that in both cases, whether that is for the government side or the petitioner side, the IJA normally give a limited weight to an affidavit submitted when the witness is not available for cross-examination. This Court has held that even a single inconsistency under certain circumstances support an adverse credibility finding, doesn't it? Haven't we? Yes, but, if I... Just carrying that to the next step, the controversy and the differences between the petitioner's statements and his father's affidavits really is a crucial matter, isn't it? Your Honor, I understand that, but if you look at the entire record of proceedings, the father's affidavit, that's changed the respondent's case, but that is his father's affidavit. The respondent is not responsible for his father's affidavit, and he doesn't know why he missed that, and the respondent's... Sorry, here, the petitioner's father was not available to clarify why he missed that particular detail of that particular arrest. And... Thank you, Counsel. Good morning, Your Honors, and may it please the Court. As Judge Mills just identified, the law of the circuit is that even a single inconsistency can provide substantial evidence supporting an agency's adverse credibility finding. And that law actually existed before the Real ID Act, and it required also that the single inconsistency go to the heart of the claim. So do you think that that law survives, that the rest of our law, our jurisprudence on adverse credibility decisions, survives the Real ID Act? Your Honor, I'm not aware if this Court has ruled on that issue as to whether the... No, this is the first case. Well, this is... Lucky you. Well, in that case, Your Honor, I would argue that the reasons behind supporting a single inconsistency, the reasons behind the rule that allows for a single inconsistency to provide substantial evidence to support an adverse credibility finding would carry through beyond the passage of the Real ID Act, because it goes really to the deference that this Court owes the administrative agency and ultimately the immigration judge in the finding of fact and credibility being, although it can be a mixed question of law and fact, is largely based on the factual record that the I.J. develops before him or her. And so it would seem to me that if this Court was going to announce a new rule or an extension of the old rule, that it would be logical to extend it even after the passage of the Real ID Act. Well, with the section, it has a litany of the things that the I.J. may consider, but then it, I think the big change in our law is that it says that these inconsistencies can be considered, relied upon by the I.J. to make an adverse credibility decision regardless whether it goes to the heart of the applicant's claim. So that would be the part from the prior law that would be changed by this. That's my understanding, Your Honor. And I think then the only question with respect to the single statement rule from before would be whether the Real ID Act requires multiple, something in the text of the Real ID Act requires multiple inconsistent statements as opposed to a single one. And frankly, Your Honor, I won't pretend to have done an extensive legislative history of that particular question, but I don't see anything in the plain text of the statute that would suggest that the Real ID Act requires an immigration judge to find any more than a single inconsistency in order to provide substantial evidence. I think that's probably a correct reading of that, that in this case, though, that one inconsistency also happens to go to the heart of the claim. I believe that's correct, Your Honor. And, in fact, there's a case that the Petitioner cited in his brief from the Seventh Circuit, Corny Jew v. Ashcroft, that talks, it's another omissions case, and it talks about the sort of circumstances where an omission might be said to go to the heart of a claim. In that case, the omission was of the most recent act of persecution. It was the most severe act of persecution, and it was the cause of Ms. Corny Jew's decision to come, I believe, from Poland to the United States. What's the name of that case? It's Corny Jew v. Ashcroft. And I apologize. I don't have a pin cite, but it was cited by the Petitioner in the opening brief. And the circumstances in this case are lined up almost identically with those in Corny Jew. In that case, or in this case, rather, the most recent act of persecution that the Petitioner allegedly suffered was this 2005 arrest. This 2005 arrest was also allegedly the most severe act of persecution the Petitioner suffered, both in terms of the duration, in terms of which was 40 days as opposed to one month or two weeks. It was quite allegedly quite a severe act of persecution, including beatings and blindfoldings and mock executions. And I think importantly, for consideration of the father's affidavit, this was also the most severe steps or the most significant steps, rather, that the father had to take in order to gain his son's freedom. He had to pay 60,000 Sri Lankan rupees as opposed to 50,000 or 35,000 in order to secure his release in 2005. So, you know, considering the father is both an observer of these acts but also a witness, I think that this was a significant inconsistency between the father's affidavit and the Petitioner's testimony, and it goes to the heart of the claim. Also, I believe, as Judge Fernandez pointed out, you know, the father's affidavit not only omits any discussion of the third arrest but also flat-out contradicts the Petitioner's explanation of why he was sent away from Sri Lanka. According to the Petitioner, he was sent away immediately after the third arrest. He was sent into hiding at his uncle's house, ultimately to Colombo and then on to the United States, all as a result of the fear of persecution that came out of this third arrest, while, as Judge Fernandez rehearsed, there was in the father's affidavit instead a story about the breakdown of the memorandum of understanding between the made no mention whatsoever of any subsequent arrest or any other reason why the father would pay to send his son to the United States. So I would acknowledge that not all omissions can necessarily serve as a basis for an adverse credibility finding. I think that even examining the affidavit and comparing it to the Petitioner's testimony, there are circumstances in this case that the IJ and the BIA did not rely upon as a means. So they weren't, you know, being persnickety here. They really were focused on a major inconsistency between the father's affidavit and the Petitioner's testimony. As we discussed at the beginning, I believe the government is of the view that a single inconsistency, even after the passage of the Real ID Act, is sufficient to form substantial evidence supporting an adverse credibility finding. Do you agree that it has to be an inconsistency, right? That we're allowed to look at the record and see if, in fact, there's an inconsistency in the testimony between the asylum statement and the credibility interview? What is it, credibility? Credible fear interview. Credible fear interview and the testimony. And there has to, in fact, be an inconsistency. Yes, Your Honor. I believe that's correct. And I would say, with respect to the third inconsistency, I think that's enough that all this Court would need to reach in order to affirm. I would say that the first two inconsistencies identified also find support in the record in the testimony itself, not even setting aside any concerns about the asylum application. If you look, for instance, on the issue of the number of soldiers involved in the 1999 arrest and compare pages 121 and 142 of the record, or for the issue of the 2005 arrest and the involvement of the Army as opposed to the paramilitaries, pages 128 and 151, I think what you would see is that the Petitioner's story on those issues shifted over time during the testimony from when he was under direct examination to when he was crossed and presented with evidence of the earlier statements and then kind of moved back. So I would not want to fully give up on the first two inconsistencies that the administrative agency found in this case, but I would also argue that they're not necessary in order to reach an affirmation. And finally, on the Convention Against Torture, I would simply note that the Petitioner has based his claim under the Convention Against Torture entirely on his history of past persecution, which is, of course, allowable, but for the fact that in this case the administrative agency found him to be incredible and the country condition reports and other materials provided by the Petitioner at the hearing, and I believe properly weighed those. I know this Court in the past has scrutinized carefully decisions to deport people without doing an independent... We do have that Knauthus case that requires the independent analysis. There is that. I believe that was the case where there was an Iraqi Christian who was found to be incredible based on some rather substantial inconsistencies, as I recall that record, and then was going to be deported to Iraq. And I believe that this Court saw that, said that, wait a minute, the agency has to conduct an independent evaluation as to whether conditions in Iraq rose to the level of creating a credible fear of future persecution, or rather credible fear of future persecution in Iraq reached that level, nor is this record on all fours because the administrative agency here did take into account the conditions in Sri Lanka in making this determination. Thank you, Counsel. The matter just argued will be submitted.
judges: Fernandez, Wardlaw, Mills